**HUNTER, ASSIGNMENT OF, In Re, et v HARLAN et**

Ohio Appeals, 1st Dist, Butler Co

No 761. Decided Nov 10, 1938

674

Shepherd & Conda, Hamilton, for appellants.

Walter S. Harlan, Hamilton, and C. G. McCandless, Hamilton, for appellees.

## OPINION

By MATTHEWS, J.

Arthur B. Hunter executed and delivered a general deed of assignment for the benefit of creditors to Ben A. Bickley on the 11th day of February, 1933, which was filed by the assignee in the Probate Court of Butler county on the same day for administration.

Prior thereto, the assignor had executed and delivered a deed bearing date of December 7th, 1932, to each of his three children conveying farms to them. These deeds were left for record with the recorder of Butler county on the 6th day of February, 1933.

After the assignment, two of the assignor's creditors, John Heinlein and Leonard Heinlein, through their attorney G. Curryer McCandless, verbally notified the assignee that they deemed these deeds in fraud of creditors and demanded that he institute actions to recover the land for the benefit of the assignor's creditors. No action having been filed by the assignee, the creditors making the demand filed actions against the grantees of the land to have the conveyances set aside on the ground that they were made in violation of §11104 GC, and they joined the assignor as a party defendant to these actions.

The prayer of these petitions was that these conveyances be declared void and that a receiver or trustee be appointed to administer the property for the benefit of all the creditors of Arthur B. Hunter.

The petition in these actions contained no allegation of a notice to the assignee to sue and his failure so to do.

The defendants, grantees, by answer, affirmatively alleged that the plaintiff had no legal capacity to sue, that the facts set forth in the petition were insufficient in law to constitute a cause of action, that the defendant, A. B. Hunter, had made an assignment for the benefit of his creditors prior to the commencement of these actions, that the deed of assignment had been filed in the Probate Court and an assignee appointed, whose duty it was to bring all actions to set aside conveyances in fraud of creditors, that creditors were without authority to bring such actions without first giving notice to the assignee to institute the actions, and then only after said assignee's failure for five days to bring them and that the creditors had not given any notice to the assignee to bring the actions.

The assignor filed no answer to these petitions.

On August 7th and September 26th, 1933, while these actions were pending the plaintiffs served written notice upon the assignee to bring actions or join in prosecuting the actions already commenced by them. The assignee did not comply with these demands.

On January 4th, 1934, a final order was entered upon the journal of the court in each of the pending cases, as follows:

"This day this cause came on to be heard on the pleadings and the evidence and was submitted to the court. The court being fully advised in the premises finds that A. B. Hunter on the 11th day of February, 1933 executed and delivered a general deed of assignment to one Ben A. Bickley; that said deed of assignment was filed in the Probate Court of Butler County, Ohio, and said Ben A. Bickley was appointed and is now the duly qualified and acting assignee of said A. B. Hunter, insolvent.

The Court further finds that this action was commenced on the 3rd day of March, 1933, and that said deed of assignment had been made and filed, and

after said Ben A. Bickley had qualified as assignee.

The Court further finds that no notice in writing was given to the assignee requesting him to institute a suit to set aside the conveyance alleged in said petition, before said petition was filed in the Common Pleas Court of Butler County, Ohio, but the Court finds that said assignee was notified orally to institute a suit to set aside the conveyance alleged in the petition before this action was brought.

The Court further finds that on the 7th day of August, 1933 there was notice in writing served upon said assignee, to either institute a suit to set aside the conveyances described in the petition, or to join in prosecuting this action; and the court further finds that a notice in writing was served upon said assignee on the 26th day of Septemer, 1936 to institute a suit to set aside the conveyance described in the petition, but that said assignee did not institute any suit to set aside the conveyance described in the petition, nor did said assignee join the plaintiff in prosecuting this action.

The Court further finds that during the pendency of this action, to-wit, on the 29th day of September, 1933, there was filed for record in the recorder's office of Butler County, Ohio, a deed from the defendants Merrill G. Hunter and Amy Phares Hunter to said assignee conveying the premises described in the petition.

It is therefore considered and adjudged by the Court that the petition be and the same is hereby dismissed at the costs of the plaintiff. To which judgment of the court the plaintiff excepts."

Thereafter, Walter S. Harlan and G. Curryer McCandless, who had acted as attorneys for the plaintiffs in these actions, filed an application in the assignment case in the Probate Court asking that they be compensated for their services therein on the ground that through these actions the farms had been brought into the assignment proceeding for administration for the benefit of all the general creditors.

The assignee, by answer, denied that it was the efforts of the applicants in bringing the actions aforesaid that resulted in the transfer of the real estate to the assignee, and affirmatively pleaded the final orders in those cases, as precluding the assertion of this claim for compensation.

After a hearing, the Probate Court found in favor of the applicants and fixed their compensation at $1900.00, payable prior to any payment to the general creditors.

This order allowing fees was appealed to the Common Pleas Court, where, as the result of a trial de novo that court found generally for the applicants, fixed the amount of their compensation at $1000.00, and ordered it paid "as a part of the costs and prior to the payment and distribution to general creditors."

The case is here on appeal on questions of law from that order.

(1) It is contended that in order for a creditor to comply with §11107 GC, it is necessary for him to serve a written notice upon the assignee and that these creditors failed to do that before instituting the actions. It is admitted that they gave notice orally to the assignee and demanded that he institute actions to recover this property.

Now, is a written notice required?

Sec. 11107 GC, does not so require in express terms. It is urged, however, that that limitation is implicit in the provision that if the assignee fails or declines to bring the action the creditors may themselves commence it "within five days after serving notice upon the assignee to commence it." Does the use of the word "serving" have the effect of restricting the meaning of the word "notice" so as to exclude a notice given orally? This is not a permissible construction of this statute.

The form and contents of a notice required by a statute is dependent upon the word of the statute as construed in

the light of the subject-matter. **30 O. Jur. 241,** Miller v Prough, 203 Mo. Ap. 413, 221 S. W. 159. Under some circumstances it can be seen that the legislature intended to require a written notice. Under others, no such legislative intent can be discerned and if it cannot, a writing is not indispensable. Under the Workmen's Compensation Act, an oral demand upon the self-insurer is sufficient. **Tyler v Rebic, 118 Oh St 522.** Under the former Mechanic's Liens Statutes, the requirement of notice was satisfied by an oral communication. **26 O. Jur. 994 and 995;** Re Farmers' Supply Co., 170 Fed. 502.

By §11106 GC, it is made the duty of an assignee to sue to set aside fraudulent conveyances. He is required by law to give bond for the faithful discharge of his duty and may be removed by the court for failure of duty. And it is manifest from **§§11106 and 11107 GC,** that the legislature assumed that he would discharge the duty imposed upon him by the former section without any demand or urging by creditors. He was selected by the assignor and. presumably was in his confidence and familiar with the status of the property and what property was within the reach of the general creditors.

**Sec. 11107 GC,** does not sanction delay on the part of the assignee until he is prodded by creditors. He should have proceeded without the necessity of a notice from any creditor. The statute does not give him a locus poenitentiae for his prior dereliction after the creditor's notice. The legislature, by this section, was not providing for a judicial writ to be served as such. It was simply providing a demand upon an officer of the court that he perform his duty. Under such circumstances, any method of reminding him of his duty is serving notice upon him. The provision is designed more to stimulate diligence on the part of the creditor giving the notice.

We are of the opinion that an oral notice by creditors is a sufficient compliance with §11107 GC.

(2) Now, have the appellees proven that they have brought a fund into court for distribution to general creditors? The appellants contend that the final order in the cases discloses that the action was dismissed at the plaintiffs' costs, and that this demonstrates that the litigation produced nothing. And that would be true were there nothing else in the order. The entry contained a finding upon which the dismissal was predicated. An examination will disclose that it is not adverse to the plaintiffs' right to maintain the actions. The only reason in the finding for the dismissal is that the subject-matter has been conveyed to the assignee during the pendency of the action. While there is some uncertainty under §11106 GC, as to whether the administration of the fund obtained by an action by creditors—whether by the assignee theretofore appointed by the Probate Court or by a receiver appointed in the action in the Common Pleas Court—there is no doubt that whether the one or the other alternative is pursued the same result is accomplished—the distribution among creditors as their rights may appear. That being true, the Common Pleas Court might very properly consider that judicial propriety would require, or at least justify it in yielding its jurisdiction in favor of the court having possession of the property and engaged in its administration. An entry showing this cannot be regarded as an adjudication adverse to the plaintiffs.

While a plaintiff is always liable for the costs regardless of the outcome. the obligation to pay should be adjudged against the defendant when judgment is rendered against him on the merits. Under the circumstances disclosed by this entry, it would seem that the court should have adjudged the costs against the defendant, but adjudging them against the plaintiffs does not indicate any intention to render a judgment

# 678

that they had no cause of action. In fact the entry shows that the substantial prayer of the petition had been complied with pendente lite by the action of the defendants.

It is true that no fund was brought into the litigation instituted by the attorneys seeking compensation, and it is also true that their application for compensation was not filed in that case. The Common Pleas Court has treated the cases filed by creditors as auxiliary to the assignment by permitting the fund to be administered by that court.

If a fund has actually been produced by litigation and brought into some case in some court, it is not fatal to the claim for compensation for services in creating the fund, that the fund is not in the case in which the services were rendered, or that the application for compensation is not made in that case. As long as the fund is under the control of the court to which the application is made, the court has power to make the award. Wallace v Fiske, [80 Fed. (2d) 897], 107 A. L. R. 726.

As the trial courts found that the services of the applicants as attorneys in the cases instituted by them resulted in bringing this fund into the assignment case, and it is reasonable to draw that inference from the circumstances, we would not be justified in disturbing that finding.

(3) We come now to the question of whether any fund for the benefit of the general creditors—the class to which the plaintiffs in actions to set aside the conveyances · belonged and for whose benefit they were prosecuted —exists. The services were rendered in opposition to all those claiming special interest in the land, such as mortgagees, judgment creditors, and other lienholders; and, of course, no award can be made to the detriment of such persons. It must appear from the evidence that there is a fund for general creditors produced by these ser-

vices, out of which compensation may be ordered paid.

The evidence consists on the one hand of positive evidence by the trustees, who succeeded the assignee, and their attorney, on direct examination that there is no such fund, and, on the other, of cross-examination developing details which it is claimed shows there is such a fund.

Undoubtedly, the total of the mortgages and judgments exceeds the amount realized from the farms, but certainly stops at that point.

There is evidence that some money is in the hands of the trustee which resulted from the operation of the farms before they were sold, but whether this is available to pay a dividend to general creditors and how much or whether it will be exhausted in payment of taxes and other charges of administration cannot be determined with any degree of certainty.

The record shows that a dispute exists as to whether the judgments are liens upon these farms and whether executions issued upon them after the assignment created liens superior to the rights of general creditors. These questions, the record shows, have not been determined finally, even in the Probate Court. We cannot determine this question in this proceeding. We notice the existence of the pendency of the contest without expressing any opinion on its merits. But until it is · determined and until it is known how much of the proceeds of the sale and income of the farms are available to general creditors, it is impossible to determine the value of these services to the general creditors. Until those factors are made reasonably definite, nothing more than guessing or speculation can be indulged as to the value of the services rendered in the cases instituted by appellees. The hearing upon the appellees' application for compensation should be postponed until the administration of the estate in the Probate Court has progressed to the point where it can be determined what fund, if any, is available to general creditors from these farms.

Attempt was made to prove the value of these farms at the time of their conveyance for the purpose of showing a greater value than was obtained by sales made by the trustee. Since those sales were approved by the Probate Court it must be assumed in this proceeding that the trustees performed their duty. Their conduct cannot be drawn in question in this proceeding. What they received for these farms in administering their trust under the direction of the court, less liens and cost of administration must be accepted as the basis in determining the value of services rendered in bringing the fund into court.

For these reasons, we conclude that this judgment is not sustained by sufficient evidence and must be reversed. My own view is that the cause should be remanded for further proceedings in the Common Pleas Court, which, in its discretion, would postpone a retrial until the administration of the estate had progressed to the point where it could be determined whether the services were beneficial to the general creditors. However, my associates are of the opinion that the cause should be remanded with instructions to the Common Pleas Court to dismiss the cause without prejudice to the right to assert the claim for compensation, should it appear that the services produced a fund available to general creditors. It is so ordered.

ROSS, PJ. & HAMILTON, J., concur.